IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DELORES DIANE WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:14cv206-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Delores Diane Ward ("Plaintiff") filed applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*, and for supplemental security income under Title XIV of the Act.  Her applications were denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the alleged onset date of May 1, 2005, through the date of the decision.  Plaintiff appealed to the Appeals Council, which rejected her request for review of the ALJ's decision.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]

---

[1]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3]   *McDaniel* is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-two years old at the time of the hearing before the ALJ, and had completed the twelfth grade.  Tr. 60.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date[.]"  Tr. 21.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "lumbar degenerative disc disease, chronic obstructive pulmonary disease, congestive heart failure, major depressive disorder, and anxiety[.]"  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  *Id.* at 32.  Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b).   In function-by function terms, the claimant can perform lifting and carrying of 20 pounds occasionally, and she can perform lifting, and carrying of 10 pounds frequently.  The claimant can perform standing and walking with normal breaks for about 6-hours out of an 8-hour workday, and she can perform sitting for about 6-hours out of an 8-hour workday.  Due to psychological factors, the claimant remains capable of understanding, remembering, and carrying out short and simple instructions.

*Id.* at 34.  After consulting the VE, the ALJ concluded at Step Four that Plaintiff "is unable to perform any past relevant work[.]"  *Id.* at 45.  Finally, at Step Five, applying the grids, the ALJ determined that "[b]ased on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a

finding of 'not disabled' is directed by Medical-Vocational Rule 202.14." *Id.* at 46. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 1, 2005, through the date of th[e] decision[.]" *Id.*

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents the following issues for this court's consideration in review of the ALJ's decision:

A.   Whether the ALJ "failed to comply with Social Security Ruling ('SSR') 83-14 and/or SSR 85-15 by failing to cite examples of specific occupations Ms. Ward can perform and the incidence of such work in the national economy."

B.   Whether the ALJ "failed to follow the 'slight abnormality' standard in finding that Ms. Ward's cervical degenerative disc disease is non-severe."

C.   Whether the ALJ "failed to properly apply the pain standard."

Pl.'s Br. (Doc. 12) at 5.

## V.   DISCUSSION

### A.   Whether the ALJ erred in failing to cite specific occupations.

Plaintiff first argues that the ALJ committed reversible error because, although he found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,] . . . the ALJ failed to cite specific examples of jobs Ms. Ward could perform and incidence of such work in the region in which she resides or in several regions of the country." Pl.'s Br. (Doc. 12) at 7 (internal quotation omitted). Plaintiff

appears to believe that the ALJ was required to provide such examples of occupations because, according to Plaintiff, the ALJ relied on a "vocational resource" to find that she is not disabled and, therefore, SSRs 83-14 and 85-15 required the ALJ to identify and discuss occupations which Plaintiff can perform given her RFC. *Id.* at 6-7.  Defendant claims that the ALJ was not required to cite examples of jobs Plaintiff can perform because he relied upon the Grids in finding that she is not disabled.  Def.'s Br. (Doc. 13) at 4-5.

As the court explained previously, the ALJ may utilize either the Grids or a vocational expert in performing his analysis under Step Five.  *See Phillips*, 357 F.3d at 1239-40.  As the court explained in *Phillips*,

> The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240.  An ALJ's use of a vocational expert as a resource in performing his Step Five analysis is clearly contemplated as an alternative measure when the Grids are not utilized by the ALJ.  *Id.*  The Eleventh Circuit has explained that "'exclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional

7

impairments that significantly limit basic work skills.'" *Id.* at 1242 (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)).

In this case, the ALJ indeed determined that "applying the Medical-Vocational Rules directly supports a finding of 'not disabled[.]'" Tr. 45. Specifically, the ALJ found that "[b]ased on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.14." Tr. 46. Plaintiff does not argue that use of the grids by the ALJ was inappropriate because she is unable to perform the full range of light work, as found by the ALJ, or because she has non-exertional impairments that significantly limit her basic work skills. Rather, Plaintiff is only arguing that the ALJ should have queried a vocational expert about the types and number of jobs available to her because she believes that the ALJ relied on such a vocational resource at Step Five. As explained above, the ALJ plainly relied upon the Grids at Step Five and, therefore, was not required to utilize a vocational source in finding Plaintiff not disabled. *Phillips*, 357 F.3d at 1239-40. As such, the ALJ did not commit reversible error in failing to question a vocational expert about the types and number of jobs available to Plaintiff given her RFC.

**B.      Whether the ALJ failed to follow the "slight abnormality" standard in concluding that Plaintiff's cervical degenerative disc disease is not a severe impairment.**

Plaintiff next argues that the ALJ committed reversible error in failing to "discuss or apply the 'slight abnormality' standard in regards to Ms. Ward's cervical degenerative disc disease." Pl.'s Br. (Doc. 12) at 8.   She also asserts that the ALJ "failed to include any limitations in his RFC assessment resulting from Ms. Ward's well documented cervical degenerative disc disease." *Id.* at 9.   She claims that her "cervical degenerative disc disease requires more severe limitations in the ALJ's determination of her ability to perform work, such as limiting [her] to less than light work[,]" and therefore should have been recognized as a severe impairment by the ALJ and accounted for in his RFC determination. *Id.*   Defendant argues that, "[b]ecause the ALJ identified other severe physical impairments and considered Plaintiff's cervical spine condition when assessing her RFC, any error in failing to find Plaintiff's cervical degenerative disc disease as a separate, severe impairment is no more than harmless error." Def.'s Br. (Doc. 13) at 6. Defendant also asserts that Plaintiff has failed to show that her cervical degenerative disc disease indeed causes additional limitations on her ability to work beyond those described in the ALJ's RFC. *Id.* at 6-7.

As discussed above, the ALJ found Plaintiff to suffer from the severe impairment of, *inter alia*, "lumbar degenerative disc disease." Tr. 21.   Although the ALJ did not also expressly find Plaintiff's cervical degenerative disc disease to constitute a severe impairment, it is evident that the ALJ reviewed medical evidence documenting that condition and various treatments that Plaintiff received to address it while discussing the

conditions he found to be severe impairments. *See* Tr. 23-24 (discussing Plaintiff's follow-up visit with Dr. Shores in which he diagnosed "bilateral cervical facet syndrome," and subsequent "facet joint medial branch block" procedures administered to Plaintiff on September 15, 1010, and September 29, 2010). *See also* Tr. 290-93. As the ALJ noted, Tr. 24 & 37, Plaintiff advised Dr. Shores that these procedures resulted in "100% relief in her neck pain after undergoing the confirmatory right C2-3, C3-4, and C4-5 facet joint injections." Tr. 271. Moreover, while Plaintiff correctly points out that an April 15, 2010, MRI of her cervical spine "showed degenerative changes at C5/6," Pl.'s Br. (Doc. 12) at 8, the physician's report states only that "there is mild focal spinal stenosis present." Tr. 335. The physician's impression was that Plaintiff had "mild subligamentous bulging of the disc" but that "intervertebral neural foramina are patent bilaterally at this level. No abnormal signals from the conus medullaris are present." *Id.* The ALJ noted the physician's impressions in his review of the medical evidence of Plaintiff's cervical degenerative disc disease. Tr. 36. As such, it is apparent that objective medical evidence of the severity of Plaintiff's cervical degenerative disc disease was indisputably reviewed by the ALJ and furthermore indicated only that her condition was "mild" and that her pain was substantially abated with treatment.

The great weight of evidence in the record, as well as the greater portion of Plaintiff's subjective complaints about her pain, concern her lower back, which the ALJ did expressly find to be a severe impairment. Although Plaintiff asserts that her "record

is replete with documentation of her cervical degenerative disc disease[,]" she points to no records corroborating her assertion that this condition "requires more severe limitations in the ALJ's determination of her ability to perform work" or that it otherwise "constitutes more than 'slight abnormalities.'"  Pl.'s Br. (Doc. 12) at 8-9.  As such, Plaintiff failed to carry her burden at Step Two to show that her cervical degenerative disc disease constitutes a severe impairment, much less that it necessitates functional limitations greater than those discussed in the ALJ's RFC finding.

Furthermore, given that the ALJ did find that Plaintiff suffers from other severe impairments, including, particularly, lumbar degenerative disc disease, any error by the ALJ in failing to find Plaintiff's cervical degenerative disc disease a severe impairment was clearly harmless because, as discussed above, the record (*see* Tr. 36, 37) makes clear that the ALJ considered Plaintiff's cervical degenerative disc disease in the subsequent sequential steps of his analysis when he articulated Plaintiff's RFC.  *See Freeman v. Comm'r, Soc. Sec. Admin.*, 2014 WL 6657482, *2 (11th Cir. Nov. 25, 2014) ("Although the ALJ found that Mr. Freeman's back pain was not a sever impairment, the record demonstrates that she considered and discussed these symptoms at subsequent steps of the sequential analysis.  Accordingly, any error in failing to find that Mr. Freeman's lower back pain was severe was harmless because the symptoms were nonetheless considered in the subsequent steps in the analysis.").

At bottom, two views of the ALJ's consideration of Plaintiff's cervical degenerative disc disease are permitted by the record.  On the one hand, the ALJ may have failed, as a matter of mere oversight, to include Plaintiff's cervical degenerative disc disease among those impairments which he found to be severe.  This supposition is supported by the fact that he discussed the condition in the section of his opinion which concludes "[b]ecause these impairments have more than a minimal effect on the claimant's ability to perform basic work activities, they are considered severe impairments."  *See* Tr. 23-24, 32.  On the other hand, the ALJ simply determined that Plaintiff's cervical degenerative disc disease is not a severe impairment because, in his estimation, Plaintiff failed to show that it causes more than a minimal restriction in her ability to do basic work activities.  In either respect, the record is clear that the ALJ considered the evidence related to the condition in formulating Plaintiff's RFC.  Plaintiff has failed to demonstrate reversible error on the part of the ALJ.

### C.     Whether the ALJ properly applied the pain standard.

Plaintiff's final claim is that the ALJ failed to properly apply the pain standard.  She asserts that she "fulfills the pain standard given that there is evidence of an underlying medical condition and that medical condition can reasonably be expected to give rise to the claimed pain."  Pl.'s Br. (Doc. 12) at 12.  She appears to contend that the ALJ's credibility finding with respect to her subjective testimony about pain demonstrates the ALJ's purportedly erroneous application of the pain standard.  *Id.*

Defendant maintains that the ALJ properly applied the pain standard, and, furthermore, that the ALJ's credibility findings respecting Plaintiff's subjective testimony about her pain are supported by substantial evidence.  Def.'s Br. (Doc. 13) at 7-8.

The United States Court of Appeals for the Eleventh Circuit has articulated a three-part "pain standard" to be utilized where a claimant attempts to establish disability through subjective testimony about pain.

> The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." [*Wilson v.* Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002)].  If the ALJ determined that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit her ability to work.  20 C.F.R. § 404.1529(b).  At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and nontreating physicians, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id*. § 404.1529(a).

> A claimant's testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995).  If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ "must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires . . . that the testimony be accepted as true."  *Id*. at 1561–62.

*McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F.App'x 886, 893 (11th Cir. 2014).

Upon review of the ALJ's decision, it is apparent that the ALJ properly applied the pain standard.  The ALJ recognized his obligation to apply and then accurately described

the pain standard in his opinion.  *See* Tr. 34.  Having surveyed the objective medical

evidence and Plaintiff's own prior statements and testimony about her pain, the ALJ

found as follows:

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with the [RFC
> articulated by the ALJ].

Tr. 35.  As for the specific reasons why the ALJ partially discredited Plaintiff's

complaints of disabling pain, the ALJ stated as follows:

> The claimant has testified to inability to walk and stand for no more than
> 10-minutes.  She reported being unable to pick up 10-pounds, and she was
> unable to stoop, which is inconsistent with the medical evidence of record.
> There are no treating or examining physicians that have restricted the
> claimant from sitting, standing or lifting/carrying due to her medical
> impairments.  The claimant has rated her pain as 7/10 from the pain scale
> with 10 being the worse pain, which the evidence of record documents
> improvement with her medication regimen and epidural/block injections.
> The claimant has stated that she can drive an automobile and she drives
> maybe three times a week to appointments, grocery store and to the
> pharmacy, which is inconsistent with total disability and consistent with the
> limitations outlined in . . . the residual functional capacity for light work.
> The claimant states that she can take care of her own personal care such as
> bathing, dressing, and grooming.   She can perform light housework,
> grocery shop, cook, and she could do the laundry—all which are consistent
> with the limitations recited in the residual functional capacity . . . .  She has
> denied being able to perform any yard work, which is inconsistent with her
> reports to Dr. Shores that she felt well enough to mow her lawn to due [sic]
> pain relief. . . .   Although, the claimant does live in a rural area, she has a
> car and she has admitted to driving to herself [sic] to appointments, grocery
> shopping, and to the pharmacy.   The claimant may not be able to do her
> past work, but she admitted to working after her alleged onset date in her
> prior job on and off because of her medical condition, which suggests that

she can perform the work activity as outlined in the residual functional
capacity of light work . . . .

Tr. 43-44.  Ultimately, the ALJ concluded that "the claimant has overstated the extent of

her medical condition and functional restrictions.  While the claimant's condition may

reasonably be expected to result in mild to moderate deficits, the evidence as a whole

does not support a finding that the claimant experiences the disabling limitations as she

so alleged."  Tr. 44.

Rather than challenging any of the specific reasons the ALJ articulated for

partially discrediting Plaintiff's testimony, Plaintiff simply states in a conclusory fashion

that

> Ms. Ward's complaints of severe pain are consistent with the severe
> impairments the ALJ found Ms. Ward to be suffering from and with the
> medical record.  In fact, Ms. Ward satisfies the pain standard given that it
> does not require objective proof of the pain itself.  As such, Ms. Ward
> satisfies the requirement of an underlying medical condition that could
> reasonably be expected to produce her pain.

Pl.'s Br. (Doc. 12) at 12.  Of course, there is no dispute that the ALJ indeed found that

Plaintiff satisfied the pain standard because he determined that the "claimant's medically

determinable impairments could reasonably be expected to cause the alleged

symptoms[.]"  Tr. 35.  But, contrary to Plaintiff's apparent belief, this finding, alone,

does not compel the conclusion that Plaintiff is disabled.  Rather, as the Eleventh Circuit

has made clear, once the ALJ determines that a claimant's impairments might reasonably

be expected to cause the sort of pain described by the claimant, the ALJ is required to

"evaluate[] the extent to which the intensity and persistence of" the claimant's alleged pain "limit her ability to work." *McMahon*, 583 F.App'x at 893 (citing 20 C.F.R. § 404.1529(b)).  To do this, the ALJ does not rely on just the Plaintiff's statements.  Rather, "the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and nontreating physicians, and other evidence of how the pain affects the claimant's daily activities and ability to work." *Id*. (citing 20 C.F.R. § 404.1529(a)).  As recounted above, the ALJ exhaustively performed this analysis, Plaintiff has not identified any singular instance in which the ALJ improperly relied upon record evidence, and, moreover, the ALJ's credibility findings are supported by substantial evidence in the record.  As such, the ALJ did not fail to properly apply the pain standard and did not commit reversible error in rendering his credibility findings regarding Plaintiff's subjective complaints of disabling pain.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 27th day of February, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

16